UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLES WILLIAMS,

    Petitioner,

  v.

DANIEL PARAMO, Warden,

    Respondent.

No. C 12-1355 WHA (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. 2245. Respondent was ordered to show cause why the petition should not be granted. Respondent filed an answer denying petitioner's claims. Petitioner filed a traverse. For the reasons stated below, the petition is **DENIED**.

## STATEMENT

**I.     PROCEDURAL BACKGROUND**

A Santa Clara jury convicted petitioner of three counts of aggravated sexual assault on a child, and two counts of a lewd or lascivious act on a child by force under Section 269 and 288 of the California Penal Code (Exh. 2 at 341-52). The jury found petitioner not guilty of one count of aggravated assault on a child (*id.* 387-90). The trial court sentenced petitioner to a prison term of

forty-five years to life, consecutive to a term of twelve years (*ibid.*).

On direct appeal, the California Court of Appeal affirmed the judgment (Exh. 6). The California Supreme Court denied review (*id*. Exh. 6, 8). Petitioner filed habeas petitions in the state superior, appellate, and supreme courts (Mot. to Dism. Exhs. A, B, F). Each was denied, and only the superior court issued a reasoned opinion as to one claim (*id*. Exh. A). After petitioner's first federal habeas petition was dismissed without prejudice, petitioner filed the instant petition.

## II.   FACTUAL BACKGROUND

Petitioner moved into the residence of his girlfriend H., the victim's mother, when the victim, A., was nine years old (*id*. Exh. 6 at 2). Over the next three years, petitioner touched A.'s "private parts" (*id*. 2-6). During the summer before A. entered the sixth grade, she told her friend Natalie that petitioner had raped her, but later A. told Natalie that she was only joking (*id.* 3). As a seventh grader, A. disclosed this pattern of abuse to her friend Paulina, who told their teacher (*ibid.*). A. testified that she did not come forward sooner because she was afraid that H. would hit her (*id.* 4). Investigating A.'s teacher's report, Officer Robert Dillon asked A. to call petitioner and pretend as if he had impregnated her (*id.* 2). During the call, the following conversation occurred:

> [A.]: I need to talk to you. [¶] [Petitioner]: What happened? [A.¶] : I'm scared. [¶] [Petitioner]: What happened? [¶] [A.]: I think I'm pregnant from when we had sex. [Petitioner]: What? [¶] [A.]: Yeah, my stomach like really hurts. [¶] [Petitioner]: Now, why, okay, let's go home and talk about that. You need to - you have a test, the test. [¶] [A.]: Yeah, I don't wanna come home until you stop touching me. [¶] [Petitioner]: Huh? [¶] [A.]: I don't wanna come home until you stop touching me. [¶] [Petitioner]: I don't understand. [¶] [A.]: I don't wanna come home until you stop touching me. [¶] [Petitioner]: Until I stop touching you? [¶] [A.]: Yeah. [¶] [Petitioner]: No, I will never touch you anymore, okay? Okay? . . . [A.]: No more sex with me. [¶] [Petitioner]: Huh? [¶] [A.]: No more sex with me. [¶] [Petitioner]: What's your problem? I said I wanna talk to you. [¶] [A.]: Promise? [¶] [Petitioner]: Hello? Huh? [¶] [A.]: Promise, no more sex. [¶] [Petitioner]: Yeah, I promise, I promise on my life, okay?

(Ans. Ex. 6 at 2). Nurse Mary Ritter performed a sexual assault exam on A. and testified that her "hymenal findings were highly suggestive of prior penetration trauma" (*id*. 5). A prosecution expert, Carl Lewis, testified that A.'s post-molestation behavior was consistent with Child Sexual Abuse Accommodation Syndrome ("CSAAS"), a theory that seeks to disabuse misconceptions as to abuse victim's post-molestation conduct (*id*. 5).

2

Petitioner's defense consisted of attacking the victim's credibility. During cross-examination, A. admitted that she did not like petitioner and that she knew that people got in trouble for inappropriately touching children. When defense counsel sought to ask A. about her biological father's conviction for a sex crime involving a minor, the trial court sustained the prosecution's objection of relevance after defense counsel failed to establish a foundation. Petitioner testified that he had imposed various rules on A. and got into arguments with her. As to the recorded phone call conversation with A., petitioner testified that he thought A. was trying to embarrass him. H. testified that petitioner's "presence in the household created tension . . . because [A.] did not want [petitioner to tell her what to do]" (Ans. Ex. 6 at 5). A.'s younger sister, S., testified that A. never told anybody that she had been sexually assaulted, but, during cross-examination, S. admitted that petitioner stared inappropriately at A. (*ibid*.). Defense counsel used a defense expert witness's suggestions to get Mary Ritter to admit that her "hymenal findings" could have resulted from natural processes, but defense counsel did not have that expert testify.

**ANALYSIS**

**I.   STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller El v. Cockrell*, 537 U.S. 322, 340 (2003). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion from the state courts. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). The last reasoned state court decision on petitioner's first claim is the decision by the California Court of Appeal on direct review (Ans. Ex. 6). The last reasoned stated court decision for the second claim is the decision by the state

3

superior court denying habeas relief (Mot. to Dismiss Ex. A). No court issued a reasoned decision as to the third claim.

## II.     ISSUES PRESENTED

Petitioner raises three claims for federal habeas relief: (1) that the trial court deprived him of his right to confrontation and right to present a defense by limiting defense counsel's cross-examination of the victim; (2) that defense counsel rendered ineffective assistance; and, (3) that the cumulative effect of these errors deprived him of a fair trial.

### A.     CROSS-EXAMINATION LIMITATIONS

During defense counsel's cross-examination of A, defense counsel sought to question A. about her biological father's conviction of a crime involving sex with a minor. Defense counsel asked A. if A. knew that people got in trouble for touching children inappropriately, and A. replied, "Yes" (Ans. Ex. 2 at 170). Defense counsel then asked whether A knew this because A.'s father had "got in trouble for that" (*ibid.*). The prosecutor objected as irrelevant, and the trial court sustained unless defense counsel could lay a foundation (*ibid.*). Defense counsel then asked how A. knew this, and A. responded, "friends, movies, sex ed . . . that's all" (Ans. Ex. 2 at 170). Then, defense counsel asked, "[i]sn't it true you know a person that has gotten into trouble for that?" A. replied, "No" (*ibid.*). Finding there was no foundation, the trial court sustained the objection (*ibid.*). Petitioner claims that this limitation prevented him from showing that A.'s knowledge about her father's conviction served as a basis for her accusation, thereby thwarting his attempt to challenge A.'s credibility (Pet. at 2-3). Consequently, petitioner contends that he was denied his right to confrontation and right to present a defense (*ibid.*).

The California Court of Appeal found no error. On appeal, petitioner asserted that A. must have known about her biological father's conviction because he was her father. The court found that this foundation for the question was speculative and unspecific. No evidence suggested that A., who did not live with her father and was only ten years old, was aware of her father's arrest. The court also noted that the defense was able to establish its theory of bias – namely that A. falsely accused petitioner in order to get him into trouble because she did not like him – by showing that A. did not like petitioner and knew about the consequences of her accusations. Accordingly, the state appellate

4

court found the trial court's restrictions did not constitute a deprivation of petitioner's right to confrontation, or right to present a defense.

### (1)   CONFRONTATION CLAUSE

The Confrontation Clause provides that the accused has the right to "be confronted with the witnesses against him." U.S. Const. amend. VI. This federal right applies to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). To determine whether a petitioner's right of confrontation has been violated by the exclusion of evidence on cross-examination, the Court must determine whether: (1) the evidence was relevant; (2) legitimate interests outweighed petitioner's interests in presenting the evidence; and, (3) the exclusion of evidence left the jury with insufficient information to assess the credibility of the witness. *See United States v. Beardslee*, 197 F.3d 378, 383-84 (9th Cir 1999).

Applying the *Beardslee* factors, the Court concludes petitioner's claim does not warrant habeas relief. With respect to the first factor, the evidence – A.'s biological father's conviction – that petitioner sought to be admitted is irrelevant. Defense counsel specifically asked A. "isn't it true that you know a person who has gotten in trouble for that?" and A. replied, "No" (Ans. Ex. 2 at 170). This evidence was irrelevant to A.'s credibility because, if A. did not know anybody who had gotten in trouble for a sex crime involving a child, then she did not know about her biological father's conviction, and this information could not have served as a basis for her allegations. The second factor also weighs against petitioner because while petitioner's wanted to present evidence that her father was a child molester, this interest was outweighed by legitimate interests against having the jury render a verdict on the improper basis of animus towards A.'s father. Regarding the third factor, the trial court allowed petitioner attack A.'s credibility by presenting evidence that she wanted him to be in trouble because she did not like him, as well as the testimony of other witnesses. . Defense counsel also sought to impugn A.'s credibility by offering testimony by S. and H contradicting A. As the jury had sufficient information to assess A.'s credibility, the third factor

also weighs against finding error.  Accordingly, the state court's denial of this claim was neither contrary to nor an unreasonable application of federal law under AEDPA.

### **(2)** **RIGHT TO PRESENT DEFENSE**

A criminal defendant has "the right to present a defense, [and his] . . . version of the facts . . . to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19 (1967). That being said, what witnesses and evidence the parties may introduce at trial is limited. *See Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (holding that due process does not guarantee a defendant the right to present all relevant evidence).  In deciding if the exclusion of evidence violates the right to present a defense, the Court balances the following five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and, (5) whether it constitutes a major part of the attempted defense.  *Chia v. Cambra*, 360 F.3d 997, 1004 (9th Cir. 2004).

In the present case, the *Chia* factors tip overwhelmingly in respondent's favor.  Under the first factor, the evidence had no probative value because the witness stated that she did not know about her biological father's conviction, and hence the conviction had no bearing petitioner's credibility.  Secondly, there was no reliable evidence that A. knew about her father's conviction; she testified that she did not, she had not lived with him, and only defense counsel's speculation suggests otherwise.  While the third factor – whether the evidence was capable of evaluation by the jury– weighs in favor of the petitioner, all the remaining factors do not. With respect to the fourth factor, A.'s father's conviction was not the sole evidence admitted on the issue of A.'s knowledge about punishments for sex crimes involving a minor.  A. testified that she did not know anybody that had gotten in trouble, but, additionally, A said that she did know about the potential results of her accusations from other sources such as sexual education courses at her school.  The evidence did not constitute a major part of petitioner's defense insofar as it was irrelevant to A.'s credibility and the defense had attacked her credibility in a number of other ways. Accordingly, the state appellate court's denial of this claim was neither contrary to nor an unreasonable application of clearly established federal law under AEDPA.

6

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner contends that defense counsel rendered ineffective assistance when she elected not to call her expert witness, Dr. Crawford-Jakubiak, to rebut the prosecution's witness, Mary Ritter, who performed A's sexual assault examination. Ritter testified that A.'s asymmetrical hymen was highly suggestive of trauma. Using Dr. Crawford-Jakubiak's advice on cross-examination, defense counsel made Ritter concede that asymmetries may have resulted from natural processes, and did not constitute definitive evidence of trauma (Exh. 2 at 206). Petitioner claims that by failing to have Dr. Crawford-Jakubiak also testify to that effect, defense counsel rendered ineffective assistance (Pet. 6).

Without addressing defense counsel's performance, the state superior court found that petitioner failed to establish prejudice. In particular, the court noted that petitioner did not show that any evidence not already provided "by Dr. Crawford[-Jakubiak] would [have overcame] . . . the strength of the other evidence[,]" and have created a reasonable probability that the result of the proceeding would have been different (Mot. to Dism. Exh. A at 2).

In order to succeed on an ineffective assistance of counsel claim, the petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires him to show deficient performance and prejudice. Deficient performance requires a showing that trial counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003). To establish prejudice, petitioner must show a "reasonable probability" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694-95.

Petitioner does not satisfy the second *Strickland* prong because he fails to show that defense counsel's failure to have Dr. Crawford-Jakubiak testify creates "a reasonable probability that the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Instead of offering novel information, Dr. Crawford-Jakubiak would have only rehashed Ritter's concession on cross-examination that hymen asymmetries can occur naturally and are not definitive evidence of trauma.

7

Even if Dr. Crawford-Jakubiak had offered a different emphasis on the testimony, a different outcome would be very unlikely in light of A.'s testimony, Ritter's testimony, the recorded phone call, and S.'s admission on cross-examination. Accordingly, the state superior court's denial of this claim was an not unreasonable application of, nor contrary to United States Supreme Court precedent, and this claim must be denied.

### C. CUMULATIVE PREJUDICE

Petitioner claims that even if the errors individually do not justify relief, the cumulative effect of all errors resulted in a fundamentally unfair trial. Summarily and without citation, the state supreme court denied this claim on direct review. In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003). Where there is a single constitutional error existing, however, nothing can accumulate to the level of a constitutional violation. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002). As petitioner has not shown any error in this case, his cumulative prejudice claim necessarily fails.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. A certificate of appealability will not issue because reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the United States Court of Appeals.

The clerk shall enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED.**

Dated: September   5  , 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE